UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| COMMUNICATION INTERFACE TECHNOLOGIES, LLC<br><br>v. | §<br>§<br>§<br>§ | |
| ALBERTSON'S LLC, ET AL. | §<br>§ | CIVIL NO.   4:20-CV-550-SDJ<br>LEAD CASE |
| 7-ELEVEN, INC. | §<br>§ | CIVIL NO.   4:20-CV-800-SDJ |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Communication Interface Technologies, LLC ("CIT") filed a patent infringement suit against Defendants Albertson's, LLC; Albertsons Companies, Inc. (collectively, "Albertsons"); and 7-Eleven, Inc. In its complaint, CIT alleges that Albertsons and 7-Eleven infringe claims of U.S. Patent Nos. 6,574,239 (the "'239 Patent"), 8,266,296 (the "'296 Patent"), and 8,291,010 (the "'010 Patent"). Before the Court are Albertsons' and 7-Eleven's respective motions to dismiss, which contend that the patents fail to recite patent-eligible subject matter under 35 U.S.C. § 101. 4:20-CV-550, (Dkt. #8); 4:20-CV-800, (Dkt. #11). Having considered the motions, the subsequent briefing, and the relevant law, the Court concludes that the motions should be **DENIED**.

**I. BACKGROUND**

CIT is the owner of the '239 Patent, the '296 Patent, and the '010 Patent (collectively, the "Asserted Patents"). The '239 Patent, which was filed in October 1998, is titled "Virtual Connection of a Remote Unit to a Server." '296 Pat. col. 1 ll. 1–2. The '010 Patent is related to the '239 Patent through a series of continuation

1

applications and has the same title. '010 Pat. col. 1 ll. 1–13. And the '296 Patent, entitled "Application-Layer Evaluation of Communications Received by a Mobile Device," is a division of an application in the same family. '296 Pat. col. 1 ll. 1–13. The Asserted Patents describe systems and methods "to enable a remote worker to stay virtually connected to a central server without the need to continuously remain connected via a physical channel." '239 Pat. col. 3 ll. 38–40; '010 Pat. col. 3 ll. 48–50; '296 Pat. col. 3 ll. 49–51.

Albertsons and 7-Eleven argue, and CIT does not dispute, that Claim 7 of the '239 Patent is representative of the asserted claims of the Asserted Patents. 4:20-CV-550, (Dkt. #8 at 7–8); 4:20-CV-800, (Dkt. #11 at 10–11). Claim 7 recites:

> 7. For use in controlling a virtual session on a server, a method comprising:
>
> establishing a virtual session with a remote unit, the virtual session being instantiated to support at least one application layer program;
>
> placing the virtual session in an inactive state;
>
> sending a signal indicative of an incoming communication request and an application-program identifying packet to said remote unit, said application program identifying packet identifying an application program that needs to resume a virtual session and communicate with said remote unit; and
>
> placing the virtual session back into the active state and transferring data between the application and the remote unit via the virtual session in response to said step of sending.

'239 Patent col. 26 ll. 45–61.

CIT alleges that Albertsons and 7-Eleven have developed mobile software applications, which they use to coordinate their products and services and to provide

convenience to their customers, that infringe on the Asserted Patents. Albertsons and 7-Eleven now move to dismiss CIT's complaint, arguing the claims of the Asserted Patents are directed to ineligible subject matter under 35 U.S.C. § 101.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Patent eligibility under Section 101 can be resolved on a motion to dismiss. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("*Berkheimer I*"). When a 12(b)(6) motion to dismiss for failure to state a claim challenges the eligibility of a patent, courts apply the same, well-known standard that applies to all 12(b)(6) motions.[1] *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1357 (Fed. Cir. 2018) (en banc) (per curiam).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (quoting *Ashcroft v.*

---

[1] By separate motion, (Dkt. #25), Albertsons requests that the Court strike and disregard the Declaration of Eric Dowling, (Dkt. #23-1), which CIT submitted in support of its opposition to the motions to dismiss. A district court has "complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988) (quotation omitted). Here, the Court declines to consider the Dowling Declaration in reaching its decision today. Much of the language in the declaration is largely the same, if not verbatim, as the language in CIT's complaint. But CIT did not incorporate the declaration into the complaint. Considering the declaration would therefore require conversion of the Rule 12(b)(6) motions into motions for summary judgment, which the Court declines to do. *See Isquith*, 847 F.2d at 193 n.3; *see also Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 755 (Fed. Cir. 2019) (concluding that "the district court did not abuse its discretion in declining to consider [an] expert declaration and convert the motion into one for summary judgment"); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 775 (Fed. Cir. 2019) (same). Thus, Albertsons' Motion to Strike Expert Declaration of Eric Dowling, (Dkt. #25), will be granted.

3

*Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). This involves a two-step inquiry. First, courts assess the allegations of the complaint and distinguish well-pleaded factual allegations from unsupported legal conclusions. *Id.* (citing *Doe v. Robertson*, 751 F.3d 383, 388 (5th Cir. 2014)). The complaint need not lay out its factual allegations in significant detail, but it must be enough that, when accepted as true, the allegations suggest that the plaintiff's right to recovery is more than just speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This means that a complaint requires more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," and courts need not assume the truth of legal conclusions framed as allegations. *Id.*

Second, courts must "ask whether the remaining allegations are sufficient to nudge the plaintiff's claim across the plausibility threshold." *Waller*, 922 F.3d at 599 (quotation and brackets omitted); *accord Iqbal*, 556 U.S. at 678. In other words, courts determine whether the complaint's factual allegations establish more than just a possibility of the plaintiff's success on its claims. Making this determination is "a content-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Waller*, 922 F.3d at 599 (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679).

## B. The *Alice/Mayo* Test

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and

requirements of this title." But the Supreme Court has long held that Section 101 contains an implicit exception to patent eligibility for claims directed toward laws of nature, physical phenomena, and abstract ideas. *Diamond v. Chakrabarty*, 447 U.S. 303, 309, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1980); *accord Ass'n for Molecular Pathology v. Myriad Genetic, Inc.*, 569 U.S. 576, 589, 133 S.Ct. 2107, 186 L.Ed.2d 124 (2013). Relevant here, "[t]he abstract idea exception has been applied to prevent patenting of claims that abstractly cover results where 'it matters not by what process or machinery the result is accomplished.'" *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (quoting *O'Reilly v. Morse*, 56 U.S. 62, 113, 15 How. 62, 14 L.Ed. 601 (1853)). In other words, "[a] patent is not good for an effect, or the result of a certain process because such patents would prohibit all other persons from making the same thing by any means whatsoever." *Id.* (quotation omitted) (quoting *Le Roy v. Tatham*, 55 U.S. 156, 175, 14 How. 156, 14 L.Ed. 367 (1853)); *see also Diamond v. Diehr*, 450 U.S. 175, 182 n.7, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981) (holding that a patent may issue "for the means or method of producing a certain result, or effect, and not for the result or effect produced"). Courts must "therefore look to whether the claims . . . focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO*, 837 F.3d at 1314 (citations omitted).

The abstract-idea exception, "is not without limits," though, "for 'all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural

phenomena, or abstract ideas,' and 'too broad an interpretation of this exclusionary principle could eviscerate patent law.'" *Ass'n for Molecular Pathology*, 569 U.S. at 589–90 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71, 132 S.Ct. 1289, 182 L.Ed.2d 321 (2012)). Thus, "[w]hether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts." *Berkheimer I*, 881 F.3d at 1368.

To aid courts in making this determination, the Supreme Court has established a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible *applications* of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014) (emphasis added); *see also Mayo*, 566 U.S. at 77. First, courts must determine whether the claims are directed to a patent-ineligible concept. *Alice*, 573 U.S. at 217. If so, courts must determine whether there are additional elements beyond the patent-ineligible concept that "transform the nature of the claim" into a patent-eligible application. *Id.* (citation omitted). The Federal Circuit has recognized that "precision has been elusive in defining an all-purpose boundary between the abstract and the concrete." *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1345 (Fed. Cir. 2015). However, courts are to look to the Federal Circuit's decisions applying *Alice* and *Mayo* for the "substantial guidance" provided therein "in determining whether claims are unpatentable under

the 'abstract idea' rubric."[2] *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016).

### III. DISCUSSION

### A. The Standard for Determining Whether a Claim is Directed to an Abstract Idea

The first step of the *Alice/Mayo* inquiry requires a court to determine if the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 573 U.S. at 217. "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). In conducting this inquiry, the claims are considered in their entirety and in light of the specification to determine whether "their character as a whole is directed to excluded subject matter." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (quotation omitted); *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016) (examining "the claims in light of the written description" under step 1).

Courts must take care not to oversimplify key inventive concepts or downplay an invention's benefits. *Enfish*, 822 F.3d at 1337–38; *see also McRO*, 837 F.3d at 1313 (explaining that "courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of

---

[2] CIT suggests that the Supreme Court's recent decision in *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524 (2019), has altered the framework for determining patent eligibility under Section 101. (Dkt. #23 at 5–6). As one district court aptly put it, "That is an idiosyncratic reading of *Henry Schein*, and [there is] no indication in the opinion that the Supreme Court intended to change the *Alice* landscape." *Hybrid Audio, LLC v. Asus Computer Int'l*, No. 3:17-CV-05947-JD, 2019 WL 3037540, at *3 (N.D. Cal. July 11, 2019). In any event, the question need not be addressed here because the Court concludes that the asserted claims are directed to a patent-eligible concept under *Alice* step 1.

the claims" (quotation omitted)). Also, "it is not enough to merely identify a patent-ineligible concept underlying the claim; we must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

Abstract ideas, which are unpatentable, "are products of the mind, mental steps, not capable of being controlled by others, regardless what a statute or patent claim might say." *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1375 (Fed. Cir. 2018) ("*Berkheimer II*") (Lourie, J., concurring in denial of rehearing en banc) (citing *Gottschalk v. Benson*, 409 U.S. 63, 67, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972)). In the context of software applications, the dichotomy between patentable concrete ideas and unpatentable abstract ideas typically turns on whether the patent is directed to "an improvement in the functioning of a computer," which is patentable, or to a method that simply recites "generalized steps to be performed on a computer using conventional computer activity," which is unpatentable. *Enfish*, 822 F.3d at 1338; *see also In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (holding that, while the claim on its face recited "concrete, tangible components such as 'a telephone unit' and a 'server,' the specification ma[de] clear that the recited physical components merely provide[d] a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner").

The Federal Circuit has, for example, deemed the following to be abstract ideas to which software-patent claims were directed: providing out-of-region access to regional radio broadcast content via a mobile software application, *Affinity Labs*,

838 F.3d at 1258; encoding and decoding image data, *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017); collecting and organizing information about available real-estate properties and displaying this information on a digital map that can be manipulated by the user, *Move, Inc. v. Real Estate All. Ltd.*, 721 F.App'x 950, 954 (Fed. Cir. 2018); parsing, comparing, classifying, storing, and editing data from hard-copy documents in a software application, *Berkheimer I*, 881 F.3d at 1367; and transmitting a request for demographic or psychographic user information, saving the user information, and matching the user to a specific advertiser, *In re Morsa*, 809 F.App'x 913, 917 (Fed. Cir. 2020).

By contrast, the Federal Circuit has held the following patent claims to *not* be directed to abstract ideas: a self-referential database table that improved upon conventional database structures, allowing more efficient launching and adaptation of databases, *Enfish*, 822 F.3d at 1335–39; an improved computer memory system with programmable operational characteristics that provided flexibility prior art processors did not possess and obviated the need to design a separate memory system for each type of processor, *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259–60 (Fed. Cir. 2017); a display interface allowing users to more quickly access stored data and programs in small-screen electronics, *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018); and, most relevant here, a communication system allowing inquiry message sending and polling to occur simultaneously, thereby reducing the delay necessary to activate a secondary station, *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1308–09 (Fed. Cir. 2020).

**B. Applicable Federal Circuit Precedent**

In determining whether claims are directed to an unpatentable abstract idea, courts are instructed to look to the Federal Circuit's large body of post-*Alice* decisions. *Affinity Labs*, 838 F.3d at 1258. The Court begins by analyzing two particularly analogous decisions in which the Federal Circuit held that the patents at issue were not directed to an abstract idea: *Core Wireless* and *Uniloc*.

In *Core Wireless*, the asserted claims disclosed "improved display interfaces, particularly for electronic devices with small screens like mobile telephones." 880 F.3d at 1359. "The improved interfaces allow[ed] a user to more quickly [than conventional navigation approaches] access desired data stored in, and functions of applications included in, the electronic devices." *Id.* The plaintiff patent-holder sued the defendant for patent infringement, and the defendant moved for summary judgment based on the invalidity of the asserted claims under 35 U.S.C. § 101. *Id.* at 1360. The district court denied summary judgment, and the action proceeded to trial where the jury found all asserted claims valid and infringed upon. *Id.* On appeal, the Federal Circuit affirmed, holding that "[t]he asserted claims in this case are directed to an improved user interface for computing devices, not to the abstract idea of an index, as argued by LG on appeal." *Id.* at 1362. The court continued: "Although the generic idea of summarizing information certainly existed prior to the invention, these claims are directed to a particular manner of summarizing and presenting information in electronic devices." *Id.*

In *Uniloc*, the claims were directed to a communication system with a primary and secondary station for broadcasting inquiry messages and where each inquiry message included an additional data field for polling a secondary station.[3] 957 F.3d at 1305–06. The specification explained that conventional communication systems involved primary stations that alternated between sending inquiry messages to identify new secondary stations and polling secondary stations, including those in "park" mode,[4] already connected to the network to determine whether they have information to transmit. *Id.* at 1305. After the plaintiff patent-holder sued the defendant for infringement of the patent, the defendant moved to dismiss the complaint under Rule 12(b)(6), arguing that the asserted claims were directed to ineligible subject matter under Section 101. *Id.* at 1306. The district court granted

---

[3] Both the district court and the Federal Circuit treated claim 2 of the patent in *Uniloc* as the representative claim. 957 F.3d at 1305. For the sake of comparison to the claims in this case, claim 2 in *Uniloc* recited:

> 2. A primary station for use in a communications system comprising at least one secondary station, wherein means are provided
>
> > for broadcasting a series of inquiry messages, each in the form of a plurality of predetermined data fields arranged according to a first communications protocol, and
> >
> > for adding to each inquiry message prior to transmission an additional data field for polling at least one secondary station.

*Id.* at 1305–06.

[4] "Park" mode is an energy-conservation mode in which a secondary station ceases active communications with the primary station on a network and must be polled before it can leave park mode and share data over the communication channel. *Uniloc*, 957 F.3d at 1305.

the defendant's motion, holding that the claims were directed to the abstract idea of "additional polling in a wireless communication system." *Id.* (quotation omitted).

On appeal, the Federal Circuit reversed. *Id.* at 1305. The Federal Circuit held that the claims were directed to an improvement in technology—that is, an improvement in communication systems that would ordinarily involve delays based on the conventional polling process (which allows secondary stations to wake up from parked mode). *Id.* at 1307–08. The claimed invention allowed message sending and polling to occur simultaneously, thereby reducing the delay necessary to activate a parked secondary station (and without the need for a permanently open communication channel between the parked secondary station and the primary station). *Id.* at 1305, 1307–08. Thus, the Federal Circuit concluded that the claims were directed to "a specific improvement in the functionality of the communication system itself" and were therefore patent eligible under *Alice* step one. *Id.* at 1309.

The Court now turns to four cases in which the Federal Circuit held the patents to be directed to an abstract idea, and on which Albertsons and 7-Eleven rely: *TLI Communications*, *Internet Patents*, *Affinity Labs*, and *Electric Power*.

First, in *TLI Communications*, the patent purported to add a new feature to cellular phones: the ability to upload and categorize digital images. *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 609 (Fed. Cir. 2016). To that end, the patent claimed a method in which images were "recorded" on a phone, "stored" in "a digital form," "transmitted" to a server, "received" by the server, classified by the server by "characterizing" the digital images, and stored by the server "taking into

consideration the classification information." *Id.* at 610. The Federal Circuit explained that the focus of the claims was not on an improved phone unit or an improved server. *Id.* at 613. Instead, the claims were "directed to the abstract idea of classifying and storing digital images in an organized manner." *Id.* And neither the well-established concept of "attaching classification data, such as dates and times, to images for the purpose of storing those images in an organized manner" nor limiting the implementation to "a mobile telephone system" saved the claims. *Id.*

Similarly, *Internet Patents* involved a patent for "the use of a conventional web browser Back and Forward navigational functionalities without data loss in an online application consisting of dynamically generated web pages." 790 F.3d at 1347. The Federal Circuit held that the claimed invention was directed to the abstract idea "of retaining information in the navigation of online forms" because the claims recited generalized steps to be performed on a computer using conventional computer activity. *Id.* at 1348. Specifically, the patent claimed routine, well-understood, and conventional activities; contained no restriction on how the desired result was accomplished; and did not describe the mechanism for the desired result. *Id.*

The asserted patent in *Affinity Labs* also involved claims that implemented an abstract idea using conventional tangible components. 838 F.3d at 1261, 1262. In *Affinity Labs*, the Federal Circuit held that claims directed to "streaming regional broadcast signals to cellular telephones located outside the region" were ineligible because "[t]he concept of providing out-of-region access to regional broadcast content is an abstract idea." *Id.* at 1255, 1258. The claims were "entirely functional in nature,"

*id.* at 1258, and were neither "directed to the solution of a technological problem" nor "directed to an improvement in computer or network functionality," *id.* at 1262 (quotation omitted). In other words, the claims were "directed not to an improvement in cellular telephones but simply to the use of cellular telephones as tools in the aid of a process focused on an abstract idea." *Id.* And that, the Federal Circuit held, "is not enough to constitute patentable subject matter." *Id.*

Likewise, the Federal Circuit held in *Electric Power Group* that claims directed to the "process of gathering and analyzing information of a specified content, then displaying the results," without "any particular assertedly inventive technology for performing those functions," were directed to an abstract idea. *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). Distinguishing the claims at issue from those in *Enfish*, the Federal Circuit explained that "the focus of the claims [was] not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Id.* Thus, as with *TLI Communications*, *Internet Patents*, and *Affinity Labs*, the Federal Circuit concluded that the claims were directed to a patent-ineligible concept. *Id.* at 1353.

## C. Application of Federal Circuit Precedent to the Asserted Patents

The above-cited precedent shows that, at least at this early stage of litigation, the Asserted Patents do not fail the Section 101 eligibility inquiry. The claims at issue here are less like those in the cases cited by Albertsons and 7-Eleven involving abstract data collection, data analysis, data retention, data transmission, data organization, data storage, etc., and more like those in the cases involving a faster,

more reliable, or more efficient computer system—i.e., a specific improvement in computer functionality. *See Uniloc*, 957 F.3d at 1307; *Core Wireless*, 880 F.3d at 1359. Like the claims in *Uniloc* and *Core Wireless*, the claims here are not directed to an abstract idea or result but rather to a specific improvement in the way client-server communication systems operate. *Cf. Diehr*, 450 U.S. at 182 n.7 (holding that a patent may issue "for means or method of producing a certain result, or effect, [but] not for the result or effect produced").

Attempting to head off this conclusion, Albertsons and 7-Eleven contend that the asserted claims are directed to the impermissibly abstract idea of "reactivating a communication session in response to a signal." (Dkt. #8 at 6). But that characterization of the representative claim is inaccurate. To arrive at it, Albertsons and 7-Eleven must disregard elements of the representative claim that the specification makes clear are important parts of the claimed advance in the combination of elements.

Read as a whole in light of the specification, the asserted claims are directed to improving the functionality of client-server communication systems—namely, accelerated speed and enhanced efficiency through virtual session reconnection at the application session layer of the protocol stack for a particular application program. Claim 7 of the '239 Patent recites a method to control a "virtual session" (i.e., a particular type of client-server communication session) on a server in which a virtual session is established with a remote unit that "support[s] at least one application layer program." '239 Pat. col. 26 ll. 47–49. To resume communications after the

15

virtual session has been deactivated, the claim recites sending an "application-program identifying packet" in addition to a "signal indicative of an incoming communication request" to the remote unit. *Id.* col. 26 ll. 45–54. The "application-program identifying packet" sent with the client-server communication signal "identif[ies] an application program that needs to resume a virtual session," thereby "placing the virtual session back into the active state and transferring data between the application and the remote unit." *Id.* col. 26 ll. 52–61.

These claim elements, as illuminated by the specification, recite specific improvements over prior technology and thus remove the asserted claims from the realm of abstract ideas. The '239 Patent explains how the claimed invention improves on conventional methods of client-server communications and focuses on the elements that provide benefits over prior art. *See Enfish*, 822 F.3d at 1335–36 (explaining that the "focus of the claimed advance over the prior art" informs the "directed to" inquiry under *Alice* step 1 and deeming claims eligible because "the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity"). Specifically, the specification elaborates on how the use of an application-program identifying packet to identify which application program should resume its application-session layer communication channel improves the functionality of the client-server communication system itself. *See, e.g.*, '239 Pat. at Abstract, col. 3 ll. 2–5, col. 12 ll. 49–53, col. 17 ll. 50–54.

One claimed advance, for example, is the reduction of delay experienced during reconnection in prior art systems by eliminating the need for full session authentication and negotiation procedures each time a communication session is needed. *Id.* col. 12 ll. 49–53; '296 Pat. at Abstract; '010 Pat. at Abstract. Another technological advantage embodied in the claims is the enablement of the server to maintain a seamless and transparent plurality of virtual sessions with remote units for specific application programs. '239 Pat. col. 7 l. 56–col. 8 l. 10. Because of the claimed improvement to the functionality of the client-server communication system, the "user is not burdened with the need to connect and reconnect, and need not be burdened with downloading and uploading data. The user experiences the full benefit of being continuously connected to the central server without the associated cost of remaining continuously connected via a physical connection." *Id.* col. 8 ll. 5–10.

Further illustrating the focus of the asserted claims, the '239 Patent's specification both describes the inefficiency of conventional client-server communication systems and explains how the prior art did not adequately solve this problem. *See id.* col. 1 ll. 31–45 (noting issues with the need to maintain a wireless connection continuously), col. 2 ll. 37–47. For example, the specification recognizes the use of "cellular digital packet data (CDPD)" to maintain virtual connectivity between a mobile unit and a CDPD communication server. *Id.* col. 2 ll. 37–41. But the specification states that this approach has several disadvantages. These disadvantages include that "CDPD networks are not universally available," whereas "[c]ellular coverage is much more ubiquitous," and that "CDPD network subscribers

must often pay high fees," making this not "the most economical solution." *Id*. col. 2 ll. 42–47. The Asserted Patents thus identify a continuing need to be solved within a computer-centric technology and explain why the claimed invention is better than prior less efficient solutions. *See Enfish*, 822 F.3d at 1337 (holding that a "conclusion that the claims are directed to an improvement of an existing technology" can be "bolstered by the specification's teachings").

For these reasons, Albertsons and 7-Eleven's attempt to distinguish the asserted claims from those the Federal Circuit has held to be eligible is unconvincing. Like *Uniloc*, *Core Wireless*, and *Enfish*, the "focus of the claims [here] is on [a] specific asserted improvement" in the functionality of the client-server communication system itself rather than on an abstract idea "for which computers are invoked merely as a tool." *See Enfish*, 822 F.3d at 1335–36; *see also Uniloc*, 957 F.3d at 1307; *Core Wireless*, 880 F.3d at 1359. This also makes the asserted claims distinguishable from the abstract data manipulation claims the Federal Circuit has deemed ineligible in prior cases on which Albertsons and 7-Eleven rely. *See Internet Patents*, 790 F.3d at 1348; *TLI Commc'n*, 823 F.3d at 612; *Affinity Labs*, 838 F.3d at 1262; *Electric Power Grp.*, 830 F.3d at 1354.

Albertsons and 7-Eleven make two contrary arguments, neither of which is persuasive. First, Albertsons and 7-Eleven contend that representative Claim 7 is directed to ineligible subject matter under Section 101 because it contains only results-oriented language without any explanation of how to achieve the result. To support their argument, Albertsons and 7-Eleven cite *Internet Patents*, where the

claim was ineligible because it recited only routine, well-understood, and conventional activities; contained no restriction on how to accomplish the desired result; and did not describe the mechanism for the desired result. 790 F.3d at 1348.

But unlike that case, Claim 7 recites the steps needed to accomplish the claimed invention. *See* '239 Patent col. 26 ll. 45–61. Whether or not these steps are specific enough to detail *how* to implement the claimed invention is better suited for a validity challenge based on lack of enablement under 35 U.S.C. § 112.[5] *See Visual Memory*, 867 F.3d at 1260–61 (rejecting a similar argument). What's more, the representative claim in this case, as explained above, is limited to the sending of signals with an application-program identifying packet and resuming a communication session at the application session layer, not any wireless communication. Thus, the asserted claims are not so broad and do not raise the same preemption concerns as the claim at issue in *Internet Patents*.

Second, Albertsons and 7-Eleven argue that the asserted claims are directed to an abstract idea because the claimed method is simply an electronic implementation of the traditional human activity of starting, pausing, and resuming a conversation with a friend. (Dkt. #8 at 10). But "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337. Courts must refrain from overgeneralizing claims because, "if carried to its extreme," it "make[s]

---

[5] Because the patent applications at issue here were filed before September 16, 2012, the pre-America Invents Act § 112 applies. Pub. L. No. 112-29, § 4(e), 125 Stat. 296–97 (2011); *see also Knowles Elecs. LLC v. Cirrus Logic, Inc.*, 883 F.3d 1358, 1365 n.7 (Fed. Cir. 2018).

all inventions unpatentable because all inventions can be reduced to underlying principles of nature which, once known, make their implementation obvious." *Diehr*, 450 U.S. at 189 n.12; *see also Alice*, 573 U.S. at 217 (cautioning courts to "tread carefully in construing this exclusionary principle [of laws of nature, natural phenomena, and abstract ideas] lest it swallow all of patent law").

Here, Albertsons and 7-Eleven's characterization of the asserted claims is unpersuasive because it is precisely the type of oversimplification of claims that the Federal Circuit has admonished lower courts to avoid. *See McRO*, 837 F.3d at 1313 ("We have previously cautioned that courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." (quotation omitted)). Contrary to Albertsons and 7-Eleven's high-level abstraction untethered to the claim language, the asserted claims of the patents-in-suit are directed to a specific improvement in client-server communication systems—not an abstract idea—that make virtual session reconnection faster and more efficient. Because Albertsons and 7-Eleven have not shown that the asserted claims are directed to an abstract idea under *Alice* step one, an analysis of step two is unnecessary. *Enfish*, 822 F.3d at 1339.

## IV. CONCLUSION

For all the foregoing reasons, Defendants Albertson's LLC and Albertsons Companies, Inc.'s Motion to Strike Expert Declaration of Eric Dowling, (Dkt. #25), is **GRANTED**, and Defendants Albertson's, LLC and Albertsons Companies, Inc.'s

motion to dismiss, 4:20-CV-550, (Dkt. #8), and Defendant 7-Eleven, Inc.'s motion to dismiss, 4:20-CV-800, (Dkt. #11), are **DENIED**.

      **So ORDERED and SIGNED this 29th day of September, 2021.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE